UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHIRLEY TRINIDAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19 CV 90 |
| | ) |
| SCHOOL CITY OF EAST CHICAGO, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

### OPINION and ORDER

This matter is before the court on defendants' motion for summary judgment. (DE # 30.) For the reasons that follow, defendants' motion will be granted in part and denied in part.

**I.     BACKGROUND**

Plaintiff Shirley Trinidad is an ENL (English New Language) paraprofessional, assisting students for whom English is a second language, and is employed by defendant School City of East Chicago ("School City") at McKinley Elementary School. (DE # 32-1 at 2.) Beginning around January 23, 2017, plaintiff began smelling a chemical odor around a particular classroom. (*Id.* at 5.) The odor made her eyes burn and made her feel lightheaded, but her symptoms were not severe. (*Id.* at 5.) She continued to smell the odor and experience symptoms for the rest of the week, but it was not as strong. (*Id.* at 6.)

The following week, the odor was stronger, so plaintiff notified her principal, defendant David Alvarado, who also noticed the odor and called maintenance. (*Id.* at 9.)

Plaintiff felt lightheaded, lethargic, and had irritated eyes and an achy chest, so she sat for a while in her supervisor's office. (*Id.* at 10.) After resting, she returned to work. (*Id.*)

The following day, January 31, 2017, plaintiff called off work and filed a complaint with the Indiana Occupational Safety and Health Administration, alleging that the odor caused an unsafe work environment. (*Id.* at 12-13.) The following day, plaintiff returned to work. (*Id.* at 14.) While she attempted to avoid the area with the odor, the odor was still strong and she again felt unwell. (*Id.* at 14-15.)

At some point, plaintiff learned that the school had removed everything from the room with the odor, cleaned the room, re-waxed the floors, and replaced the ceiling tiles. (*Id.*) However, it is unclear when she learned this information.

On February 2, 2017, plaintiff told defendant Alvarado that parents should be notified about the odor and the school should be closed. (*Id.* at 16.) Defendant Alvarado was not responsive to plaintiff's request. (*Id.* at 16-17.) Later that evening, plaintiff made the following Facebook post:

> ATTENTION!!!! If you have children attending McKinley School, please be aware that there is a terrible chemical odor lurking throughout the building. Many children and staff had (sic) gotten sick. Vomiting, dizziness and headaches, burning eyes and achy chest are some of the symptoms.

(*Id.* at 17; DE # 32-2 at 2.)

The following day, plaintiff was suspended with pay for five days, and was instructed to remove the Facebook post. (DE # 32-1 at 19-20.) A few days later, plaintiff

2

met with the school's director of human resources and was told that the odor had been caused by dead mice. (*Id.* at 20.)

Plaintiff returned to work on February 14, 2017. (*Id.* at 22.) While the odor was not as strong as it had been, she still felt sick. (*Id.*) She was hospitalized in late March for a bacterial infection in her left lung, but no physician has opined that this infection was related to her employment with School City. (*Id.* at 23.)

In August 2017, plaintiff was transferred to Central High School. (*Id.* at 3.) When she was transferred, she was given different, and less desirable, job responsibilities, for which she claims she did not have appropriate training. (*Id.*) She was in this new position at the high school for approximately two months, and then was transferred to a position working with preschool children for another few months. (*Id.* at 3-4.) While she was working with preschool children, she was still not working in her capacity as a paraprofessional. (*Id.*) She was then transferred back to her previous position at McKinley. (*Id.* at 4.) Plaintiff filed a grievance through her union with regard to her transfer to Central High School. (*Id.* at 27.)

As a result of this incident, plaintiff filed the present suit in the Superior Court of Lake County. (DE # 4.) In her complaint, plaintiff names as defendants: School City; the Board of Education of School City; Paige McNulty, the Superintendent of School City; Sally Clark, the Director of Human Resources for School City; and David Alvarado, the Principal of McKinley Elementary School.[1] Defendants removed the case to this court.

---

[1] Other named defendants were subsequently dismissed from this case.

3

(DE # 1.) Plaintiff's complaint alleges the following claims against all defendants: (1) gross negligence; (2) retaliation in violation of her union contract; (3) violations of her First Amendment right to free speech; and (4) violations of the Indiana False Claims and Whistleblower's Protection Act and the Indiana Occupational Safety and Health Act.

Defendants have moved for summary judgment. (DE # 30.) This matter has been fully briefed and is ripe for ruling.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

### III. ANALYSIS

#### A. Motion to Strike

Defendants have filed a motion to strike documents attached to plaintiff's response brief, on the basis that these documents are inadmissible. (DE # 39.) Defendants also argue that their statement of material facts should be deemed admitted because plaintiff failed to comply with Northern District of Indiana Local Rule 56-1(b). (*Id.* at 1.) Plaintiff did not respond to defendants' motion. Defendants' motion to strike will be granted.

Pursuant to Federal Rule of Civil Procedure 56(c), a party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or show that the materials cited do not establish the absence of a genuine dispute. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the court may consider the fact undisputed for purposes of the motion. Fed. R.

5

Civ. P. 56(e). The enforcement of Federal Rule of Civil Procedure 56(e) is left to the sound discretion of the district court. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1109–10 (7th Cir. 2014).

Additionally, in the Northern District of Indiana, Local Rule 56-1(b)(2) requires that a party opposing a motion for summary judgment file a response brief or appendix that contains a section labeled "Statement of Genuine Disputes" that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary. "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). A Statement of Genuine Disputes "is a critical element of any response to a motion for summary judgment, because without it, the movant's version of the facts are accepted as undisputed." *Carragher v. Ind. Toll Road Concession Co.*, 936 F. Supp. 2d 981, 985 n.1 (N.D. Ind. 2013); *see also Caldwell v. Klemz*, No. 2:14-CV-455, 2017 WL 4620693, at *3 (N.D. Ind. Oct. 12, 2017). It is within the district court's discretion to require strict compliance with its local rules governing summary judgment. *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015); *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014).

In this case, under the heading "Statement of Facts," plaintiff merely states: "Plaintiff incorporates by reference the Notice of Claim she filed as her Statement of Fact." (DE # 37.) Plaintiff attached this document, as well as other documents, to her

6

response brief. This in no way complies with Federal Rule of Civil Procedure 56 or Local Rule 56-1. It was plaintiff's responsibility to clearly identify any disputes of material fact, with appropriate citation to evidence in the record. In light of her failure to do so, defendants' motion to strike will be granted. Defendants' statements of material facts, as supported by the evidence in the record, are deemed admitted. The documents attached to plaintiff's response are stricken and will not be considered in the resolution of the pending motion for summary judgment.

    *B.*    *Negligence*

In Count I of her complaint, plaintiff alleges that defendants committed gross negligence regarding the condition of the school, related to the odor, which resulted in her becoming ill. (DE # 4 at 10-12.) Defendants argue that Count I is preempted by the Indiana Worker's Compensation Act ("WCA"). (DE # 31 at 6-7.)

The WCA contains an exclusive remedy provision. Ind. Code § 22-3-2-6. Under this provision, the rights and remedies granted to an employee by the Act "on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death[.]" *Id.*

The Indiana Supreme Court has held that intentional torts are not precluded under the language of this provision because the provision only applies to accidental employment-related injury or death. *Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271, 1273 (Ind. 1994). "Because injuries intentionally inflicted by an employer are not 'by

7

accident,' suits arising therefrom are not barred by the compensation act." *Id.* at 1271. "[A]n injury occurs 'by accident' only when neither the sufferer nor the employer intends it to result." *Id.* at 1274. Mere employer negligence or recklessness is not sufficient to establish the intent required to fall outside the scope of the exclusivity provision. *Id.* at 1275. "The employer that acts in the belief that it is causing an appreciable risk of harm to another may be negligent, and if the risk is great its conduct may be characterized as reckless or wanton, but it is not an intentional wrong." *Id.* Rather, "nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice." *Id.*; *see also Holbrook v. Lobdell-Emery Mfg. Co.*, 219 F.3d 598, 601 (7th Cir. 2000).

Gross negligence is not an intentional tort. The Indiana Supreme Court has defined gross negligence as "'[a] conscious, voluntary act or omission in reckless disregard of . . . the consequences to another party.'" *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (quoting BLACK'S LAW DICTIONARY 1057 (7th ed. 1999)). "A finding of gross negligence is predicated on a showing of negligence, as it is the intentional failure to perform a duty in reckless disregard of the consequences." *McGowen v. Montes*, 152 N.E.3d 654, 661 (Ind. Ct. App. 2020); *see also Crawford v. City of Muncie*, 655 N.E.2d 614, 623, n.15 (Ind. Ct. App. 1995) (rejecting as "illogical" plaintiff's argument that gross negligence qualifies as an intentional tort).

Gross negligence is a claim that alleges precisely the type of reckless behavior that is subject to the exclusivity provision of the WCA. *See Agee v. Cent. Soya Co.*, 695

8

N.E.2d 624, 627 (Ind. Ct. App. 1998) ("While the evidence . . . might reveal conduct amounting to gross negligence or even recklessness on the part of Central Soya, it does not establish actual knowledge on Central Soya's part that an injury was certain to occur" and therefore "does not establish intentional conduct on the part of Central Soya that might otherwise remove the Agee plaintiffs' complaint from the exclusivity provisions of the [Worker's Compensation] Act.")

Here, there is no allegation or evidence that defendants intended to harm plaintiff or had actual knowledge that an injury was certain to occur. Plaintiff argues that she has alleged both negligent and intentional acts by the defendants, and that the intentional acts fall outside of the scope of the WCA's exclusive remedy provision. (DE # 37 at 3.) Yet, plaintiff's brief makes clear that the intentional acts she attributes to defendants have to do with their response to her complaints regarding the odor; she has not identified any intentional acts that caused the odor. Thus, plaintiff has not identified any intentional acts that might take her claims outside the scope of the WCA's exclusivity provision. Accordingly, defendants are entitled to summary judgment on Count I of plaintiff's complaint.

  C. *Violation of Union Contract*

In Count II of her complaint, plaintiff claims that defendants retaliated against her, in violation of the school's collective bargaining agreement, after she complained about the odor to defendants, the Indiana Department of Occupational Safety and Health Administration, and on Facebook. (DE # 4 at 12-13.) Defendants move for

9

summary judgment on Count II, arguing that the court lacks subject matter jurisdiction to consider this claim because plaintiff did not exhaust her administrative remedies under the collective bargaining agreement. (DE # 31 at 7.) Specifically, defendants argue that plaintiff failed to grieve all of her retaliation claims and failed to submit her grievances to arbitration. (*Id.*) Plaintiff responds that defendants should have filed a motion to dismiss on this issue, and argues that she did file a grievance. (DE # 37 at 4.)

First, a word about jurisdiction. While Indiana may treat exhaustion requirements as jurisdictional, federal courts do not. *See e.g. Thompson v. Cope*, 900 F.3d 414, 425 (7th Cir. 2018). "A jurisdictional label under state law does not affect a federal court's subject-matter jurisdiction because 'state law cannot enlarge or contract federal jurisdiction.'" *Id.* (quoting *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 909 n.3 (7th Cir. 2005)). "Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority," though it can deny a plaintiff a viable cause of action. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002). Under federal law, "[a] failure to exhaust is normally considered to be an affirmative defense," not a jurisdictional requirement. *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006).

The court finds that defendants preserved their failure to exhaust affirmative defense in answering plaintiff's complaint. While they framed their defense in terms of a jurisdictional defect (a misapprehension made by both parties in briefing this issue), the defense was adequately asserted. (DE # 15 at 32.) Thus, while plaintiff's alleged

10

failure to exhaust would not deprive this court of subject matter jurisdiction, the court will consider whether plaintiff has a viable cause of action in Count II.

"It is well settled that if a CBA [collective bargaining agreement] establishes a grievance and arbitration procedure for the redress of employee complaints, employees wishing to assert claims based on a CBA first must exhaust the grievance procedure before resorting to a judicial remedy." *McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007) (employer was entitled to summary judgment on plaintiff's claim for breach of collective bargaining agreement where plaintiff failed to utilize collective bargaining agreement's grievance and arbitration procedures). While there are situations in which the court may excuse an employee's failure to exhaust a collective bargaining agreement's grievance and arbitration procedures, *id.*, plaintiff has not asserted that any of these exceptions apply, nor does the evidence support such a finding.

School City's collective bargaining agreement sets forth grievance and arbitration procedures. (DE # 32-1 at 39-40.) The evidence supports a finding that plaintiff filed a grievance related to her transfer to Central High School. Plaintiff does not assert, or identify any evidence that would support a finding, that she fully exhausted her administrative remedies with respect to her transfer, or that she attempted to exhaust her administrative remedies with respect to her other retaliation claims. Accordingly, defendants are entitled to summary judgment on Count II of plaintiff's complaint.

11

D.     *First Amendment*

In Count III of her complaint, plaintiff alleges that defendants retaliated against her, in violation of her right to free speech under the First Amendment by: suspending her; ordering her to delete her Facebook post; transferring her; and failing to train her for her new assignment. (DE # 4 at 15-16.) Defendants move for summary judgment on this claim, arguing that plaintiff cannot establish a violation of her rights under the First Amendment. (DE # 31 at 8.)

### 1.     First Amendment Retaliation Claim

"It is well established that a public employee retains First Amendment rights to free speech. As a general rule, the government cannot retaliate against its employees for engaging in constitutionally protected speech." *Hutchins v. Clarke*, 661 F.3d 947, 955 (7th Cir. 2011) (internal citations omitted). "Whether a public employee's speech is constitutionally protected is a question of law, 'even though it may . . . require[ ] predicate factual determinations.'" *Harnishfeger v. United States*, 943 F.3d 1105, 1113 (7th Cir. 2019) (quoting *Gustafson v. Jones*, 290 F.3d 895, 906 (7th Cir. 2002)).

"To prove a First Amendment retaliation claim, a public employee must establish three elements: first, that she engaged in constitutionally protected speech; second, that she suffered a deprivation likely to deter protected speech; and third, that her protected speech was a motivating factor in the deprivation and ultimately, if the public employer cannot show it would have inflicted the deprivation anyway, its but-for cause." *Id.* at 1112–13; *see also Swetlik v. Crawford*, 738 F.3d 818, 822–28 (7th Cir. 2013).

In order to establish that she engaged in constitutionally protected speech, a plaintiff must initially pass the double threshold established by *Connick v. Myers*, 461 U.S. 138 (1983), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006). *Harnishfeger*, 943 F.3d at 1113. "The employee must show under *Garcetti* that she spoke as a citizen rather than an employee, 547 U.S. at 418, and under *Connick* that she spoke on a matter of public concern rather than 'matters only of personal interest.' 461 U.S. at 147." *Harnishfeger*, 943 F.3d at 1113.

If a plaintiff can meet these threshold standards, the court proceeds to consider the balancing of employee and employer interests required by *Pickering v. Board of Education*, 391 U.S. 563 (1968). Under the *Pickering* analysis, "the employee's interest in making the speech must outweigh the employer's interest in 'promoting the efficiency of the public services it performs through its employees.' If not, the employer's action is considered to be justified and does not violate the First Amendment." *Swetlik*, 738 F.3d at 827 (internal citations omitted); *see also Garcetti*, 547 U.S. at 418 ("The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.").

If plaintiff prevails under the *Garcetti*, *Connick*, and *Pickering* inquires, only then can the court find that plaintiff engaged in constitutionally protected speech. *Harnishfeger*, 943 F.3d at 1113.

13

### 2. Plaintiff Spoke as a Private Citizen

In this case, defendants argue that plaintiff's speech was not constitutionally protected because plaintiff's speech regarding the odor was made pursuant to her duty as an employee to keep students safe, rather than as a private citizen. (DE # 31 at 8.) *See Garcetti*, 547 U.S. at 421–22 (a public employee's statements made pursuant to official duties are not made as a private citizen for the purposes of the First Amendment).

"Under *Garcetti*, the key question is whether the employee makes the relevant speech 'pursuant to [his] official duties.'" *Lett v. City of Chicago*, 946 F.3d 398, 400 (7th Cir. 2020) (quoting *Garcetti*, 547 U.S. at 421). "In other words, we ask whether the speech 'owes its existence to a public employee's professional responsibilities.' If it does, then the employee speaks in his capacity as an employee rather than a private citizen and his speech is not protected." *Id.* (quoting *Garcetti*, 547 U.S. at 421).

Here, plaintiff's speech in her Facebook post did not owe its existence to plaintiff's duties as a ENL paraprofessional. Plaintiff's speech took place outside of her workplace, outside of working hours, and outside of official channels. While plaintiff's speech was related to her employment, her speech did not discuss the subject matter of her work, but rather the conditions at her workplace. Defendants' claim that plaintiff's speech arose from her employment duties because she has a general responsibility to ensure student safety is far too broad, and would encompass large portions of speech that might otherwise be protected. Furthermore, there is no evidence in the record that suggests that alerting parents to the conditions of the school fell within the scope of

plaintiff's official duties. Given the circumstances in this case, the court finds that plaintiff's speech was not made pursuant to her official duties, but rather was made as a private citizen, and thus may be eligible for First Amendment protection.

### 3. Defendants Fail to Establish *Pickering* Defense

Defendants next argue that plaintiff's speech was not protected under the *Pickering* analysis because plaintiff's statements regarding the odor were false and made with a reckless disregard for the truth, and because defendants reasonably believed that plaintiff's statements were false. (DE # 31 at 8-9.) Defendants specifically argue that plaintiff's claim in her Facebook post that multiple people had become sick from the odor was false. (*Id.*)

"Under *Pickering* and its progeny, if an employer takes action against an employee for speech that the employer, based on an adequate investigation, reasonably believes to be false, the employer's interests outweigh the speaker's interests." *Swetlik*, 738 F.3d at 825. Moreover, "[t]he Court in *Pickering* suggested that an employee's statements may fail the test and not warrant protection if they were false and made with knowing or reckless disregard for the truth, and we have since held that 'an employee's speech is not protected where it is [ ] made with a reckless disregard for the truth[.]'" *Id.* at 827 (citing *Pickering*, 391 U.S. at 574; *Brenner v. Brown*, 36 F.3d 18, 20–21 (7th Cir.1994)).

Defendants bore the burden of proving their *Pickering* defense. "At trial, the public employer has the burden of showing by a preponderance of the evidence that

15

[the *Pickering*] balance weighs in its favor." *Harnishfeger*, 943 F.3d at 1115 (citing *Gustafson*, 290 F.3d at 909). "Requiring proof by a preponderance of the evidence indicates that the public employer's burden is one of persuasion, not merely production, in the nature of an affirmative defense." *Id.* "When a public employer moves for summary judgment on the *Pickering* balancing defense, therefore, it must 'lay out the elements of the [defense], cite the facts which it believes satisf[y] these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant' on the defense." *Id.* at 1116 (internal citation omitted); *see also Gazarkiewicz v. Town of Kingsford Heights, Indiana*, 359 F.3d 933, 942 (7th Cir. 2004).

In this case, defendants have not established that the *Pickering* balance weighs in their favor. First, defendants have failed to establish that plaintiff lied, or acted with a reckless disregard for the truth, when she claimed that multiple people had become sick from the odor. The record demonstrates that plaintiff was aware as of January 30, 2017, of several people who had experienced symptoms that they attributed to the odor. (*See e.g.* DE # 32-1 at 6-7; DE # 40-1.) Thus, there remains a triable question of fact on this issue. *See Swetlik*, 738 F.3d at 827 ("Whether an employee recklessly disregarded the truth in making a statement will often present a disputed factual issue. An employer cannot avoid liability for First Amendment retaliation simply by asserting that an employee's otherwise protected speech was false or was made recklessly.").

Second, defendants have failed to identify sufficient evidence to determine that they took action against plaintiff for her speech because, after an adequate

16

investigation, defendants reasonably believed plaintiff's speech was false. Defendants have not identified any evidence regarding when the investigation took place or what the scope of the investigation entailed. They also have produced no evidence that they believed no one other than plaintiff had become ill. In other words, defendants have failed to establish that the evidence is so one-sided as to rule out the prospect of a finding in favor of plaintiff on their *Pickering* defense. Accordingly, defendants have not established that they are entitled to summary judgment on the basis that plaintiff's speech was not protected under the First Amendment.

### 4. Deprivation Likely to Deter Protected Speech

Finally, defendants argue that, even assuming plaintiff's speech was protected, retaliation requires an adverse employment action, and plaintiff's suspension with pay and transfer in placement and position for a few months' time does not amount to an adverse employment action because it did not materially alter the terms and conditions of her employment. (DE # 31 at 9.) Defendants attempt to hold plaintiff to a more stringent standard than is required under 42 U.S.C. § 1983.

"A § 1983 retaliation claim does not require an adverse employment action within the same meaning as other anti-discrimination statutes." *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011); *see also Spiegla v. Hull*, 371 F.3d 928, 941 (7th Cir. 2004), *disapproved in later appeal on other grounds*, 481 F.3d 961 (7th Cir. 2007). Rather, in the § 1983 context, the action of which the employee is complaining must be sufficiently adverse to deter the exercise of the individual's right to free speech. *Hutchins*, 661 F.3d

at 956; *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013) ("The First Amendment requires a deprivation 'likely' to deter free speech, a standard considered more lenient than the Title VII counterpart of adverse action.").

In this case, a reasonable jury could certainly find that plaintiff's immediate suspension and subsequent transfer to a less desirable position, for which she claims she was not trained, was sufficiently adverse to deter the exercise of her free speech. Accordingly, defendants are not entitled to summary judgment on Count III of plaintiff's complaint.

### E. State Statutory Claims

In Count IV of her complaint, plaintiff alleges that defendants violated her rights under the Indiana False Claims and Whistleblower's Protection Act, and the Indiana Occupational Safety and Health Act. (DE # 4 at 16-18.) Defendants argue that they are entitled to summary judgment on each of these claims, as well as any claim that plaintiff may have attempted to state under the federal Occupational Safety and Health Act. (DE # 31 at 9.) Plaintiff failed to respond to this portion of defendants' motion, and has therefore waived any argument she may have had in response. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

The Indiana False Claims and Whistleblower's Protection Act protects an employee who has been discriminated against by his or her employer because the

18

employee (1) objected to an act or omission described in Section 2 of the Act, or (2) initiated, testified, assisted, or participated in an investigation or action under the Act. Ind. Code § 5-11-5.5-8. Section 2 of the Act pertains to the misuse of public funds. The court agrees with defendants that the misuse of public funds is not at issue in this case. Therefore, defendants are entitled to summary judgment on plaintiff's claim under the Indiana False Claims and Whistleblower's Protection Act.

Defendants next argue that there is no private cause of action under either the federal or Indiana Occupational Safety and Health Acts. (DE # 31 at 10.) The federal act requires an employee to file a complaint with the Secretary of Labor – the party authorized to bring an action for a violation of the federal act. 29 U.S.C. § 660(c)(2). Similarly, the Indiana act only permits an employee to bring a cause of action through the Commissioner for the Department of Labor. Ind. Code § 22-8-1.1-38.1; Ind. Code § 22-8-1.1-48.3 ("Nothing in this chapter shall be construed to . . . create any private right of action."). Accordingly, defendants are entitled to summary judgment on all of plaintiff's claims in Count VI of the complaint.

### F.   Qualified Immunity

Finally, defendants make a cursory argument that all defendants, except School City, are entitled to qualified immunity because there is no evidence that any constitutional violation occurred. (DE # 31 at 10.) As discussed above, there remains an open question regarding whether plaintiff's First Amendment rights were violated.

Accordingly, defendants' motion for summary judgment on the basis of qualified immunity must be denied.

**IV.    CONCLUSION**

For these reasons, the court **GRANTS** defendants' motion to strike. (DE # 39.) The court **GRANTS IN PART and DENIES IN PART** defendants' motion for summary judgment, on the terms identified in this opinion and order. (DE # 30.) The court **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by **February 26, 2021**. A trial date will be set under a separate order.

                                      **SO ORDERED.**

Date: February 12, 2021

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT